**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

       - against -

KALEIL ISAZA TUZMAN and
ROBIN SMYTH,

        Defendants,

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ECF Case

No. 15 Civ. 7057 (AJN)

**THE GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**APPLICATION TO INTERVENE AND FOR A LIMITED STAY OF DISCOVERY**

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States
    of America.

DAMIAN WILLIAMS
EDWARD Y. KIM
ANDREA M. GRISWOLD
Assistant United States Attorneys

    *- Of Counsel -*

## PRELIMINARY STATEMENT

The United States of America, by and through the United States Attorney for the Southern District of New York ("the Government"), respectfully submits this memorandum in support of its application (i) to intervene in the above-captioned case, pursuant to Rule 24 of the Federal Rules of Civil Procedure, and (ii) to stay depositions, interrogatories, requests for admission, and production of transcripts of testimony before the Securities and Exchange Commission ("SEC") and notes of interviews with, and any form of discovery that would create statements of, any person whom the Government asserts may be called as a witness in the criminal prosecution, until the conclusion of the parallel criminal case, *United States* v. *Kaleil Isaza Tuzman and Robin Smyth*, 15 Cr. 536 (PGG) (the "criminal action").

It is the Government's understanding that one defendant, Kaleil Isaza Tuzman ("Tuzman"), opposes the limited stay requested by the Government.   The other defendant, Robin Smyth ("Smyth"), consents to the motion to intervene and to stay discovery. Courts in this district, however, frequently stay civil discovery when there is a parallel criminal prosecution, as there is here.   A stay is especially appropriate where, as here, the Government seeks only a limited stay, with respect to discovery that would effectively be 3500 material in the criminal action.   The SEC does not oppose this motion.

## FACTUAL BACKGROUND

This case, and the parallel criminal action, arise out of the same underlying events.   The facts set forth below are detailed in the indictment returned in the criminal action on August 12, 2015 by a Grand Jury in the Southern District of New York (the "Indictment"), and are reflected in the SEC's complaint in this civil action as well (the "SEC Complaint").[1]

---

[1]       There are two substantive differences between the facts alleged in the SEC Complaint and those alleged in the criminal action.   First, only the SEC Complaint includes allegations regarding Tuzman's

KIT digital Inc. ("KITD") was a provider of end-to-end video asset management software and related services, with a focus on Internet Protocol-based interactive media, headquartered in Praque, Czech Republic and New York, New York.    From in or about May 2008 to in or about August 12, 2009, KITD's common stock was traded publicly over-the-counter ("OTC"). Beginning on or about August 13, 2009, KITD's common stock was traded on the NASDAQ. Tuzman is the former Chairman of the Board of Directors and Chief Executive Officer ("CEO") of KITD and Smyth is the former Chief Financial Officer ("CFO").    In their respective roles, Tuzman and Smyth signed the quarterly and annual financial statements that KITD filed with the SEC.    Tuzman and Smyth were two of the largest individual shareholders in KIT digital stock.

*Market Manipulation*

Between December 2008 and September 2011, Tuzman engaged in efforts to artificially inflate the share price and trading volume of KITD shares.    Tuzman's efforts to manipulate the stock were conducted in coordination with a co-conspirator named as CC-1 in the indictment. CC-1 operated a hedge fund (the "Hedge Fund") in North Carolina.    Specifically, at Tuzman's behest, CC-1 would purchase and sell shares of KITD through the hedge fund, at times for the purpose of manipulating the stock price and at times for the purpose of creating the illusion of greater volume in the trading for KITD shares.    Tuzman personally invested his own money into the Hedge Fund, and also arranged for KITD to invest approximately $1,150,000 with the Hedge Fund, thereby using the Hedge Fund as a vehicle by which KITD, at Tuzman's direction, invested in itself, without disclosing that fact or the scheme to manipulate KITD's stock to the investing

---

alleged efforts to hide the loss of a multi-million dollar investment of KITD funds by Tuzman into a fund managed by two individuals.   (SEC Complaint ¶¶ 15-39.)   Second, only the Indictment contains allegations regarding Tuzman and Smyth's efforts to improperly recognize revenue related to contracts between Sezmi (a KITD acquisition target) and two technology companies, Totalmovie and Iusacell. (Indictment ¶¶ 67-77.)

public.   In addition, in an effort to conceal the scheme to manipulate KITD's stock price, Tuzman also misled KITD auditors about the true reason for KITD's investment in the Hedge Fund.

*Accounting Fraud*

Between 2010 and 2012, Tuzman and Smyth, working with other KIT digital executives, engaged in a scheme to deceive KITD's shareholders, members of the investing public, KITD's independent auditors and others concerning KITD's true operating performance and financial results. This scheme involved two principal methods: (a) the improper recognition of revenue from so-called "perpetual license" contracts for KIT digital software (contracts that gave the purchasing customer the right to use the licensed software indefinitely), and (b) the execution of fraudulent "round-trip" transactions which had the effect of using KIT digital's own cash, rather than payments received from customers, to pay off bills, known as accounts receivable, that were due and owed to KIT digital from those customers, rather than disclose to KIT digital's auditors and the investing public the fact that the bills were uncollectible.

With regard to the first method, Tuzman and Smyth knew that KIT digital had sold perpetual licenses for software that, at the time of sale, was not complete and required substantial future development.   But instead of booking revenue ratably as KIT digital reached interim development milestones or recognizing revenue in full once software development was complete, Tuzman and Smyth caused KIT digital to recognize the entirety of the revenue from certain contracts at the time of sale despite the fact that KIT digital had not delivered a product to KIT digital's customers.   This premature revenue recognition violated relevant software accounting principles and was contrary to KIT digital's statements to the investing public and its independent auditors, among others.

In total, because of Tuzman and Smyth's actions, KIT digital recognized approximately

$6,000,000 USD in revenue that should not have been in its quarterly and annual reports submitted to the SEC.   This improper revenue recognition also misled the investing public and others about KIT digital's true financial health.

With regard to the second method, Smyth and Tuzman, on at least one occasion, caused KIT digital to use company money, ostensibly escrowed in connection with a corporate acquisition, to pay off suspicious or uncollectible receivables by year-end.   Specifically, Smyth and Tuzman caused KIT digital to add an artificial "restructuring fee" to the purchase price of a company that KIT digital sought to acquire.   Once the purchase price was raised, Smyth established an escrow account that was funded with $7,850,000 USD in KIT digital cash which purported to represent the so-called restructuring fee.   The use of the escrowed KIT digital money was governed by a "side letter" between KIT digital and the acquired company that was intentionally hid from KIT digital's independent auditors and the investing public.   The side letter dictated that escrowed funds could be used only to cover the costs KIT digital expected to incur from integrating the acquired company into KIT digital.   However, Tuzman and Smyth used the escrowed money in a round-trip transaction that resulted in KIT digital using its own cash to pay down old receivables that, because of their age, might have attracted scrutiny from KIT digital's independent auditors and could have negatively impacted KIT digital's financial statements if they had remained unpaid.

*Impact of the Fraud*

On November 21, 2012, after an internal investigation led by KIT digital's audit committee, KIT digital announced to the investing public that the company had discovered various errors and irregularities in its historical financial statements and that it would have to issue restated financial statements.   On the first trading day following this announcement, the price of KIT

4

digital's common stock plummeted more than 64% from the previous day's closing price.   In or about December 2012, KIT digital's stock was delisted from NASDAQ.   KIT digital subsequently declared bankruptcy.

*The Indictment and Status of the Defendants*

The Indictment charges Tuzman in nine counts: counts One through Four charge Tuzman with conspiracy, securities fraud and wire fraud, each in connection with the market manipulation scheme.   Counts Five through Nine charge both Tuzman and Smyth with conspiracy, securities fraud, and making false statements, each in connection with the accounting fraud schemes.   Smyth, who was arrested in Australia in August 2015, is presently detained at the MCC pending trial.   Tuzman was arrested in Colombia, also in August 2015, and is currently detained in Colombia pending his extradition to the United States.

## ARGUMENT

The Government's requests to intervene and for a limited stay of this civil action should be granted.   If full-fledged civil discovery were to proceed at this time, there would be a risk of significant interference with the criminal case.   On the other hand, a stay of (i) depositions, (ii) interrogatories, (iii) requests for admission, and (iv) the production of transcripts of SEC testimony and notes of interviews with, and any form of discovery that would create statements of, any person whom the Government asserts may be called as a witness in the criminal prosecution (the "3500 Material") would prejudice neither party to this civil action. Moreover, the requested stay would preserve the Court's resources because many of the issues presented by the civil action will be resolved in the criminal action.

## I.    THE GOVERNMENT SHOULD BE GRANTED PERMISSION TO INTERVENE

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, anyone may intervene as of

right in an action when the applicant "claims an interest relating to the property or transaction that is the subject of the action" and the applicant "is so situated that 'disposing of the action may as a practical matter impair or impede the movant's ability to protect its interests. . . .'" Alternatively, Rule 24(b)(2) provides for permissive intervention when the movant "has a claim or defense that shares with the main action a common question of law or fact."   The Government respectfully submits that its application satisfies both of these provisions given the effect this civil proceeding would have on the criminal action and the identity of claims and facts between the parallel actions.

As a general rule, courts "have allowed the government to intervene in civil actions—especially when the Government wishes to do so for the limited purpose of moving to stay discovery."  *Twenty First Century Corp.* v. *LaBianca*, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992); *see also SEC* v. *Credit Bancorp.*, 297 F.3d 127, 130 (2d Cir. 2002).   The Government has a "discernible interest in intervening in order to prevent discovery in a civil case from being used to circumvent the more limited scope of discovery in the criminal matter."   *SEC* v. *Chestman*, 861 F.2d 49, 50 (2d Cir. 1988).

As an initial matter, intervention is warranted because the Government's interests in upholding the public interest in enforcement of the criminal laws cannot be protected adequately by the existing parties in this civil litigation, none of whom represent the Government's interests with respect to the investigation and enforcement of federal criminal statutes.   *See Bureerong* v. *Uvawas*, 167 F.R.D. 83 (C.D.Cal. 1996) ("the Government's prosecutorial and investigative interest is not adequately protected by any of the civil parties . . . .   Clearly neither the plaintiff nor the defendants have this identical interest.").

Moreover, a trial in this action in advance of a related criminal trial could impair or impede

the Government's ability to protect its interests in the enforcement of federal criminal law.   This

case and the related criminal case arise from the same alleged market manipulation and accounting

fraud schemes and will likely involve many common questions of law and fact.   Holding a civil

trial before a criminal trial would create the possibility that there will be two trials covering the

same transactions underlying the allegations of market manipulation and accounting fraud.

Given the nature of the overlap of the facts and issues in dispute in this case and the criminal

action, the overlap between witnesses is likely to be considerable.   This raises the probability that

numerous witnesses will be unnecessarily burdened by having to testify twice.   In light of those

circumstances, the Government respectfully submits that its application to intervene should be

granted.

## II.   <u>A LIMITED STAY OF DISCOVERY IS APPROPRIATE</u>

### A.     **Applicable Law**

This Court has the inherent power to stay discovery in the interests of justice pending the

completion of a parallel criminal trial.   *See Kashi* v. *Gratsos*, 790 F.2d 1050, 1057 (2d Cir.

1986) ("[A] court may decide in its discretion to stay civil proceedings . . . when the interests of

justice seem . . . to require such action.") (internal citations and quotations omitted).   When

considering whether to grant a stay, courts balance the following factors:

> (1) the extent to which the issues in the criminal case overlap with
> those presented in the civil case; (2) the status of the case, including
> whether the defendants have been indicted; (3) the private interests
> of the plaintiffs in proceeding expeditiously weighed against the
> prejudice to plaintiffs caused by the delay; (4) the private interests
> of and burden on the defendants; (5) the interest of the court; and
> (6) the public interest.

*SEC* v. *Treadway*, No. 04 Civ. 3464(VM)(JCF), 2005 WL 713826, at *2-*3 (S.D.N.Y. March

30, 2005) (quoting *In re Worldcom, Inc. Sec. Litig.*, Nos. 02 Civ. 3288, 02 Civ. 4816, 2002 WL

31729501, at *4 (S.D.N.Y. Dec. 5, 2002)); *see also Volmar Distrib., Inc.* v. *New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (listing similar factors).   "Balancing these factors is a case-by-case determination, with the basic goal being to avoid prejudice."   *Id.*

> **B.    Discussion**

Application of these factors here overwhelmingly weighs in favor of the limited stay sought by the Government.

> **1.    *The Extent of Overlap***

That the criminal and civil cases involve nearly identical facts and issues weighs heavily in favor of a stay.   "The most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues."   *Volmar Distrib.*, 152 F.R.D. at 39 (citing Judge Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (S.D.N.Y. 1989)); *see also Parker* v. *Dawson*, No. 06 Civ. 6191 (JFB), 2007 WL 2462677, at *4 (E.D.N.Y. Aug. 27, 2007) (same); *United States* v. *One 1964 Cadillac Coupe DeVille*, 41 F.R.D. 352, 353 (S.D.N.Y. 1966) ("Where both civil and criminal proceedings arise out of the same or related transactions the government is ordinarily entitled to a stay of all discovery in the civil case until disposition of the criminal matter.").

Here, the SEC and criminal actions describe virtually the same market manipulation and accounting fraud schemes, involving the same participants, and nearly all of the same events.   The market manipulation by the Hedge Fund at Tuzman's direction – and Tuzman's illicit compensation of CC-1 for this manipulation – is central in both the criminal action and the civil case.   In fact, the manipulation in both cases involves the same pattern of trading by the Hedge Fund.   Likewise, the two primary accounting fraud issues in the criminal action – the improper recognition of revenue from so-called "perpetual license" contracts and the execution of fraudulent

"round-trip" transactions to hide uncollectible accounts receivable are also at the core of this case and involve nearly the same series of transactions.   In short, the cases involve virtually identical facts and issues.   As a result, this factor weighs heavily in favor of a stay.

### 2. Status of the Criminal Case

The return of an indictment in the criminal case is also a factor that weighs in favor of a stay.   *In re Par Pharm, Inc. Sec. Litig*., 133 F.R.D. 12, 13 (S.D.N.Y. 1990) ("The weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment."); *Trustees of Plumbers and Pipefitters Nat'l Pension Fund, et al.* v. *Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) ("A stay of a civil case is most appropriate when a party to the civil case has already been indicted for the same conduct for two reasons: first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved.")   Thus, this factor also militates in favor of a stay.

### 3. Prejudice to the Parties

No prejudice to the parties will result from the very limited stay requested by the Government. The Government seeks to stay only depositions, interrogatories, requests for admission, and production of the above-referenced 3500 Material.   In addition, there is currently no trial date in place, so there will be no undue delay in the proceedings as a result of the limited stay.   Finally, the SEC will produce document discovery (other than the 3500 Material), so the defendants will have opportunity to evaluate the evidence and prepare their defense.

#### 4.      *The Public Interest*

The Government and the public have an important interest in ensuring that civil discovery is not used to circumvent the restrictions that pertain to criminal discovery.

Rule 16 of the Federal Rules of Criminal Procedure and Title 18, United States Code, Section 3500 provide that in criminal cases, the statements of Government witnesses shall not be the subject of discovery "until said witness has testified on direct examination in the trial of the case."   Thus, in the criminal action, the defendants would not be entitled to the balance of discovery that the Government is moving to stay until (or shortly before) trial.

Courts repeatedly have recognized that a civil litigant should not be allowed to use civil discovery to avoid the restrictions that would otherwise pertain in criminal discovery to a criminal defendant.   *See SEC* v. *Beacon Hill Asset Management LLC*, No. 02 Civ. 8855 (LAK), 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) (in granting government's motion to stay, court noted: "The principal concern with respect to prejudicing the government's criminal investigation is that its targets might abuse civil discovery to circumvent limitations on discovery in criminal cases."); *Phillip Morris Inc.* v. *Heinrich*, No. 95 Civ. 328 (LMM), 1996 WL 363156, at *19 (S.D.N.Y. June 28, 1996) (granting stay motion because of government's justification that if "civil discovery is not stayed, the criminal investigation will be prejudiced, as the Defendants may have an opportunity to gain evidence to which they are not entitled under criminal discovery rules."); *Bd. of Governors of the Federal Reserve System* v. *Pharaon*, 140 F.R.D. 634, 639 (S.D.N.Y. 1991) ("'A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal trial.'") (quoting *Campbell* v. *Eastland*, 307 F.2d 478, 487 (5th Cir. 1952)).

10

Therefore, in order to avoid circumvention of the criminal discovery restrictions, and because the defendants will not in any way be prejudiced in preparing and defending themselves, this factor weighs in favor of the Government's application.

> **5.** *The Interests of the Courts*

Considerations of judicial economy also weigh in favor of granting a stay.   Issues common to both cases can be resolved in the criminal proceeding, thereby simplifying the civil action.   *See, e.g., SEC* v. *Contorinis*, No. 09 Civ. 1043 (RJS), 2012 WL 512626, at *2 (S.D.N.Y. Feb. 3, 2012) ("Courts in this district have consistently found that a defendant convicted of securities fraud in a criminal proceeding is collaterally estopped from relitigating the underlying facts in a subsequent civil proceeding"); *Twenty First Century Corp.* v. *LaBianca*, 801 F. Supp. at 1010-11 (recognizing judicial economy as a factor to be considered).   Because the criminal case's outcome could directly affect the conduct, scope, and result of the civil proceeding, this factor favors the Government's application.

*          *          *

In sum, and as set forth above:   the Government has requested a limited stay of discovery; there is considerable overlap between the parallel proceedings; charges have been filed in the criminal case; there is no prejudice to the parties from the requested stay; there is a strong public interest in preventing the civil discovery rules from being used to improperly obtain discovery in the criminal case; and judicial economy is ensured from the requested stay.   Therefore, the balance of factors overwhelmingly favors the requested discovery stay.

**<u>CONCLUSION</u>**

For the reasons just given, the Government respectfully requests that its application to intervene and for a limited stay of depositions, interrogatories, requests for admission, and discovery of the 3500 Material described above, be granted in its entirety.

Dated:  New York, New York
        January 11, 2016

                             Respectfully submitted,

                             PREET BHARARA
                             United States Attorney

               By:      ___/s/_____
                             DAMIAN WILLIAMS
                             EDWARD Y. KIM
                             ANDREA M. GRISWOLD
                             Assistant United States Attorneys
                             One Saint Andrew's Plaza
                             New York, New York 10007
                             Telephone: (212) 637-1205
                             Facsimile: (212) 637-2477